IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

VICKIE BELL; PHILLIP B. BELL, JR.
and JONATHAN BELL                                                                         PLAINTIFFS

v.                                          Case No. 1:13-cv-01075

MINE SAFETY APPLIANCES;
RUEMELIN MANUFACTURING
COMPANY, INC.; PULMOSAN
SAFETY EQUIPMENT CORPORATION;
CLEMCO INDUSTRIES, INC.; and
JOHN DOES 1-7                                                                             DEFENDANT

## MEMORANDUM OPINION

Before the Court are two Motions for Summary Judgment filed by Defendant Ruemelin Manufacturing Company, Inc. ("Ruemelin"). (ECF Nos. 103 & 143). Plaintiffs have responded to these motions. (ECF Nos. 121 & 155). Ruemelin has filed Replies. (ECF Nos. 124 & 160). Plaintiffs have filed a surresponse. (ECF No. 168). Defendant has filed a surreply. (ECF No. 183).

Phillip Bell ("Bell") was employed by Camden Monument. Bell worked in the Camden Monument plant and also sandblasted outside the plant on the weekends in cemeteries. Ruemelin supplied some equipment to Camden Monument during the years Bell was employed there. Bell died in 2010. Plaintiffs brought this cause of action against Ruemelin, alleging that the equipment it supplied to Camden Monument was defective and led to Bell's death.

In its first Motion for Summary Judgment, Defendant asserts that the undisputed evidence fails to establish a prima facie case against Ruemelin with regard to any theory of liability, including product defect, negligence/failure to warn, and breach of warranty. (ECF No. 103). In the second Motion for Summary Judgment, Ruemelin asserts that, without certain opinion testimony, Plaintiffs have no evidence that Bell was exposed to a sufficient dose of silica to cause silicosis, and that there

is no evidence to support their claims of injury caused by silica sand inside the Camden Monument plant. (ECF No. 143). The Court finds these matters ripe for its consideration.

## DISCUSSION

### I. Standard

A motion for summary judgment will be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). To establish that a genuine issue of material fact exists, the nonmoving party must show that (1) there is a factual dispute, (2) the disputed fact is material to the outcome of the case, and (3) the dispute is genuine. *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 339, 401 (8th Cir. 1995). A dispute is genuine only if a reasonable jury could return a verdict for either party. *Id.*; *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *see also McLaughlin v. Esselte Pendaflex Corp.*, 50 F.3d 507, 510 (8th Cir. 1995).

### II. First Motion for Summary Judgment

Defendant argues that Plaintiffs cannot establish a prima facie case against Ruemelin for any of the theories, separated into three different product categories: (1) abrasive blasting equipment used inside the Camden Monument plant, (2) abrasive blasting equipment used outside the Camden Monument plant, and (3) the canvas hood.

#### A. Blasting Equipment Inside the Camden Monument Plant

Defendant first asserts that Plaintiffs cannot establish a prima facie case against Ruemelin because Camden Monument began using aluminum oxide, rather than silica sand, as a blasting abrasive at its facility as early as 1973. Ruemelin asserts that, because it sold its first blast generator

to Camden Monument in November 1972, the blasting done inside the plant with Ruemelin equipment used aluminum oxide rather than silica sand "virtually the entire time." Defendant further asserts that, even during the time Camden Monument used the Ruemelin blast equipment and silica sand, Bell was not a sandblaster inside the plant. Thus, there is no causal connection between the injury allegedly caused by the use of silica sand and Ruemelin's equipment. In response, Plaintiffs argue that the equipment should have contained warnings against the use of silica sand.

Plaintiffs have not contested Defendant's assertion that Camden Monument ceased using silica sand as a blasting abrasive during 1973. The only time Ruemelin may be held liable for the alleged harm inside the Camden Monument plant is during the time silica sand was used with Ruemelin blast equipment, from November 1972 until sometime in 1973.

In order to show that the defendant's product was a proximate cause of his injury, a plaintiff must prove (1) that he was exposed to a particular toxic substance made by the defendant, (2) with sufficient frequency and regularity, (3) in proximity to where he actually worked, (4) such that it is probable that the exposure to the defendant's product caused the plaintiff's alleged injuries. *Skender v. Ameron Intern. Corp.*, 2009 WL 129891, at *2 (W.D. Ark. Jan. 20, 2009) (citing *Chavers v. Gen. Motors Corp.*, 79 S.W.3d 361, 369 (Ark. 2002)).

In support of its contention, Defendant points to the depositions of Camden Monument employees Ed Parker and Larry Benton. Ed Parker stated in his deposition that Bell "not only did shop, he did sales, and was actually in the office where everybody else was in the shop." (ECF No. 103-3). However, he also said that Bell "didn't stay out of the shop." (ECF No. 103-3). Larry Benton stated in his deposition that he never saw Bell doing the job of blasting inside the plant. (ECF No. 103-5). In response, Plaintiffs point to the deposition of Terry Reddin to demonstrate that

Bell did sandblast inside the shop. (ECF No. 121-11). In his deposition, Reddin says that he saw Bell operate the sandblaster in 1972 inside the plant. (ECF No. 121-11, pg. 14). Reddin also asserts that Bell trained him to do some shape-carving "later on, say around '73 or '74." (ECF No. 121-11, p.14). However, Reddin remembers only one time that Bell actually did sandblasting in the shop, and he is unclear during what year that occurred. (ECF No. 121-11, p.23). Though Plaintiffs point to Reddin's deposition that Bell was in the shop, they do not point to any evidence that Bell used the equipment on a regular basis.

In reviewing the evidence in a light most favorable to Plaintiffs, it is clear that Bell used the Ruemelin blasting equipment inside the shop infrequently from November 1972 until sometime in 1973. Arkansas law requires that Plaintiffs show not only that he used the product, but that the exposure was sufficiently frequent and regular, such that it is probable the exposure caused the injury. *Chavers v. Gen. Motors Corp.*, 79 S.W.3d 361, 369 (Ark. 2002). The expert testimony presented does not support the conclusion that infrequent exposure to the silica sand would be a substantial cause of Bell's silicosis. (Expert Report of Frank Parker ECF No. 153-1; Expert Report of Ching-tsen Bien 154-1). Accordingly, because Plaintiffs' proof fails to show the elements required for the "frequency, regularity, and proximity" test under Arkansas law, a reasonable jury could not find in favor of Plaintiffs. Therefore, summary judgment for Defendant is appropriate on this theory.

B. Blasting Equipment Outside the Camden Monument Plant

Defendant next asserts that Plaintiffs cannot establish a prima facie case regarding the blasting work done in cemeteries outside the Camden Monument plant because Bell did not use Ruemelin abrasive blasting equipment when he performed this work.

In support of this contention, Defendant points to the testimony of Ed Parker, Gary Stiffler, and Larry Benton. (ECF No. 103-3, 4, & 5). In his deposition, Ed Parker testified that the equipment used to cut death dates is not the Ruemelin equipment because it is too big to take out into the cemetery. (ECF No. 103-3). Gary Stiffler stated in his deposition that the equipment they used to blast death dates in the cemetery was Lindsay equipment. (ECF No. 103-4). Larry Benton offered testimony that the equipment used was a Lindsay pot and compressor. (ECF No. 103-5).

Plaintiffs do not contest this assertion in their reply to Defendant's Motion for Summary Judgment. However, in their surreply, Plaintiffs point to the deposition of Terry Reddin in an attempt to demonstrate a genuine issue of material fact. However, in Reddin's deposition, he discussed Ruemelin equipment in the context of working inside the Camden Monument plant, not outside in the cemeteries. Plaintiffs have cited no evidence which demonstrates that the Ruemelin abrasive blasting equipment was used by Bell outside the Camden Monument plant. Accordingly, Ruemelin cannot be held liable for any injuries Bell incurred from that equipment, and summary judgment for Defendant is appropriate on this theory.

### C. Canvas Hood

In their Amended Complaint, Plaintiffs assert that Bell wore a Ruemelin Type 30 non-air-fed hood while sandblasting. (ECF No. 50, p.5). Ruemelin asserts that there is no proof that the canvas hood worn by Bell when he performed the cemetery sandblasting work was manufactured by Ruemelin. Plaintiffs do not point the Court to any evidence that Bell wore a Ruemelin canvas hood when sandblasting in the cemetery or at any other time.

In a product liability action, a plaintiff must demonstrate causation. Ark. Code Ann. § 16-116-102(5). "Before [a defendant] can be held liable for causing an injury, the [plaintiff] must

establish that the [defendant's] product was actually used," *National Bank of Commerce of El Dorado v. Dow Chemical Co.*, 165 F.3d 602, 606-07 (8th Cir. 1999), because "[t]he party that actually controls the manufacturing and labeling of the product in question, and enjoys the profit of its sale, should bear legal liability for any resulting injury," *Fields v. Wyeth, Inc.*, 613 F. Supp. 2d 1056, 1061 (W.D. Ark. 2009). There is no evidence that Bell actually used a canvas hood manufactured or supplied by Ruemelin. Accordingly, Plaintiffs' claims for products liability caused by defective design, marketing, and breach of warranties as it relates to the respiratory equipment cannot stand. Summary judgment for Defendant is appropriate on these claims.

Plaintiffs also claim that Ruemelin can be held liable in negligence because it assumed a duty owed to Bell, even if he did not wear a canvas hood manufactured by Ruemelin. The issue of what duty is owed is always a question of law. *Heigle v. Miller*, 965 S.W.2d 116 (Ark. 1998). Under Arkansas law, a party who gratuitously undertakes a duty can be liable for negligently performing that duty. *Steward v. McDonald*, 958 S.W.2d 297, 299 (Ark. 1997).

Plaintiffs' assumption of duty theory asserts that Bell relied on the Ruemelin Bulletin 36-D when he decided to wear a non-air fed hood while sandblasting. The Ruemelin Bulletin 36-D shows two types of helmets, a blast helmet with an air-fed hood and Ruemelin's type 30 canvas helmet with a screen. (ECF No. 85-5). Plaintiffs assert that Ruemelin voluntarily assumed a duty of care when it furnished the bulletin to Camden Monument. They contend that, because Ruemelin did not provide any manuals or instructions to Camden Monument with warnings not to use silica sand when abrasive blasting with a non-air fed hood or to use an air supplied hood when conducting abrasive blasting using sand, Ruemelin breached the duty that was voluntarily assumed.

In support of this theory, Plaintiffs rely on two cases, *Mandel v. United States*, 793 F.2d 964

(8th Cir. 1986) and *Harter v. Ozark-Kenworth*, 904 S.W.2d 317 (Mo. App. 1995) (interpreting Arkansas law). Both are premises liability cases. In *Mandel*, the Court held that once the Park Service "chose to furnish its patrons with information about the entire Buffalo River, it had a concomitant duty to exercise reasonable care in doing so." *Mandel*, 793 F.2d at 966. In *Harter*, the Court found that there was a disputed issue of fact as to whether the defendant assumed a duty in providing equipment to the plaintiff on its own property. No party has pointed the Court to a products liability case.

The Court finds that the Arkansas Supreme Court would not find that Ruemelin assumed a duty to Bell under the facts of this products liability case. Plaintiffs have not cited any authority to support their assertion that Ruemelin owed Bell a legally enforceable duty or that such a duty could be assumed, under Arkansas law, through the unilateral statements made in the Ruemelin 36-D brochure. *See Boerner v. Brown & Williamson Tobacco Corp.*, 260 F.3d 837, 849 (8th Cir. 2001). Instead, in a products liability case, the plaintiff must actually demonstrate that the product was used. *See Fullington v. Pfizer, Inc.*, 720 F.3d 739, 744 (8th Cir. 2013) (interpreting Arkansas law). There is no evidence in this case that Bell used a Ruemelin canvas hood. Accordingly, Defendant's Motion for Summary Judgment should be granted on all claims relating to the use of the canvas hood.

III. Second Motion for Summary Judgment

In its second Motion for Summary Judgment, Defendant argues that Plaintiffs' two expert witnesses, Ching-tsen Bien and Frank Parker, reach their opinions on the basis of unreliable methodology and erroneous calculations. Thus, there is no evidence of causation. This argument is duplicative of arguments already made to the Court in the form of *Daubert* motions. The Court ruled on those motions, finding that Bien and Parker were qualified to testify and that their testimony

7

would not be excluded in this case. (ECF No. 165). Accordingly, the Court will not grant summary judgment on the basis that Plaintiffs' experts are unqualified.

Defendant also argues that the Plaintiffs' expert testimony does not relate to any alleged exposure to silica that occurred inside the Camden Monument plant. Defendant argues that, because Arkansas law requires a plaintiff to prove the actual level of toxic material exposure, and Plaintiffs have produced no evidence of any levels of exposure inside the Camden Monument plant, they cannot present a prima facie case of proximate causation with regard to the work performed inside the plant. In their reply, Plaintiffs do not address Defendant's argument.

A plaintiff in a toxic tort case "must prove the levels of exposure that are hazardous to human beings generally as well as the plaintiff's actual level of exposure to the defendant's toxic substance before he or she may recover." *Wright v. Willamette Industries, Inc.*, 91 F.3d 1105 (8th Cir. 1996). Under Arkansas law, causation in a toxic tort case requires a showing that a plaintiff had sufficient "frequency, proximity and regularity" of exposure to support contraction of disease. *Green v. Alpharma, Inc.*, 284 S.W.3d 29, 36 (Ark. 2008) (citing *Lohrmann v. Pittsburgh Corning Corp.*, 782 F.2d 1156 (4th Cir. 1986)). To prove exposure levels, plaintiffs need not produce a "'mathematically precise table equating levels of exposure with levels of harm.'" *Bednar v. Basset Furniture Manufacturing Co.*, 147 F. 3d 737 (8th Cir. 1998) (quoting *Wright*, 91 F.3d at 1107). Rather, a plaintiff need only make a threshold showing that he or she was exposed to toxic levels known to cause the type of injuries he or she suffered. *Id.*

When the party without the burden of persuasion moves for summary judgment by demonstrating that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim, the burden switches to the nonmoving party to call the Court's

attention to the evidence. *Celotex Corp. v. Catrett*, 477 U.S. 317, 332-33 (1986) (Brennan, J., dissenting). Plaintiffs do not direct the Court to any evidence they have produced related to Bell's exposure to silica inside the facility. Instead, their briefs and arguments focus on Bell's outdoor sandblasting duties. The Court has independently reviewed Plaintiffs' responses to Defendant's Motions to Exclude the Expert Opinion Testimony of Plaintiffs' Witnesses. (ECF Nos. 153 & 154). In those exhibits, the Court found no expert opinion testimony relating to the levels of silica dust that Bell was exposed to inside the Camden Monument plant.

In Frank Parker's deposition, he indicated that Bell's silica exposure inside the Camden Monument plant would have most likely ceased in the mid-seventies when silica was no longer used as a blasting agent. (ECF No. 153-2, p.71). After analyzing the silica sand dangers, Parker concludes his report by opining that "Mr. Bell's continued weekend practice of performing sandblasting of tombstones using a MSA dust respirator and a non-air fed hood substantially increased his risk for developing silicosis." (ECF No. 153-1). Ching-tsen Bien's conclusions are also based upon calculations of sandblasting performed on the weekends outside of the Camden Monument plant. (ECF No. 154-1). Because there is no evidence that Bell used Ruemelin equipment during his weekend work outside of the Camden Monument plant, Plaintiffs have failed to produce evidence to support a prima facie case of proximate causation.

Plaintiffs have failed to satisfy their burden of calling to the Court's attention any evidence that satisfies their causation burden relating to Bell's exposure to silica sand inside the Camden Monument plant. Without causation testimony, a jury would be left to speculate whether the amount of silica sand Bell was exposed to inside the plant was sufficient to cause his injuries. Accordingly, Plaintiffs are not able to carry their burden of proving causation and summary judgment is

appropriate as to Plaintiffs' claims of injuries caused inside the Camden Monument plant on this alternative ground. *See Wright*, 91 F.3d at 1108.

## CONCLUSION

For the reasons stated herein, there is no genuine dispute of material fact in this case. The Court finds that Defendant's Motions for Summary Judgment (ECF No. 103 & 143) should be and hereby are **GRANTED**. This case is dismissed in its entirety. The Court will issue a Judgment of even date consistent with this Memorandum Opinion.

**IT IS SO ORDERED**, this 26th day of February, 2016.

/s/ Susan O. Hickey
Susan O. Hickey
United States District Judge