IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

VICKIE BELL; PHILLIP B. BELL, JR.
and JONATHAN BELL                                                                PLAINTIFFS

v.                                        Case No. 1:13-cv-01075

MINE SAFETY APPLIANCES;
RUEMELIN MANUFACTURING
COMPANY, INC.; PULMOSAN
SAFETY EQUIPMENT CORPORATION;
CLEMCO INDUSTRIES, INC.; and
JOHN DOES 1-7                                                                      DEFENDANT

## ORDER

Before the Court is Plaintiffs' Motion to Re-Assert Default Judgment Against Pulmosan Safety. (ECF No. 200). The Court held a hearing on Plaintiffs' Motion for Default Judgment on June 13, 2016. (ECF No. 202). After the hearing, Plaintiffs filed three Supplemental documents, including a brief and exhibits produced during trial. (ECF Nos. 203, 204, 205). The Court finds this matter ripe for its consideration.

### I. BACKGROUND

Plaintiffs filed this lawsuit in October, 2013, against Mine Safety Appliances ("MSA"), Ruemelin Manufacturing Company, Inc. ("Ruemelin"), Pulmosan Safety Equipment Corporation ("Pulmosan"), and Clemco Industries ("Clemco"). Pulmosan never filed an answer or other responsive pleading. The Clerk entered default against Pulmosan in July 2014. (ECF No. 23). Plaintiffs moved for default judgment against Pulmosan. (ECF No. 21). The Court denied the motion without prejudice to avoid "inconsistent and unsupportable" results which may have occurred since other defendants were involved in the lawsuit. (ECF No. 35). Thereafter, Plaintiffs reached a settlement with MSA, the Court granted summary judgment in favor of Ruemelin, and Plaintiffs

dismissed Clemco. Now that all other defendants have been dismissed, Plaintiffs reassert their motion for default judgment against Pulmosan.

Pulmosan, organized under the laws of the state of New York, sold respiratory equipment until the company entered dissolution in 1986. Pulmosan's dissolution is suspended for product liability claims against Pulmosan in cases where the exposure occurred prior to 1986. (ECF No. 204-3). Because the Plaintiffs in this case allege that the decedent was exposed to respirable silica before 1986, Plaintiffs' claims against Pulmosan remain as viable claims.

## II. DEFAULT JUDGMENT

The district court may enter a default judgment when a party fails to appropriately respond in a timely manner. *See, e.g.*, *Inman v. Am. Home Furniture Placement, Inc.*, 120 F.3d 117, 119 (8th Cir. 1997). If the court determines that defendant is in default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true. *Thomson v. Wooster*, 114 U.S. 104 (1885). The court must ensure that "the unchallenged facts constitute a legitimate cause of action" prior to entering final judgment. *See Murray v. Lene*, 595 F.3d 868, 871 (8th Cir. 2010).

The Plaintiffs in this case are Vickie Bell, Phillip Bell, Jr., and Jonathan Bell. Vickie Bell is the widow of Phillip Bell, Sr. They have one son together, Jonathan Bell, who was born in 1975. Mr. Bell has one son, Phillip Bell, Jr., from a previous marriage. In the Plaintiffs' Amended Complaint, they assert that the decedent was exposed to silica sand while employed at Camden Monument from 1968 until sometime between 1982 and 1985. (ECF No. 58). During that time, he used respiratory protection including a Pulmosan HC-1 non-air-fed hood developed by Pulmosan. As a result of his use of this defective product, Bell developed the diseased condition in his lungs.

He died from pulmonary silicosis/pneumoconiosis on October 21, 2010. Plaintiffs are the wife and sons of the decedent. The Court finds that Plaintiffs have demonstrated sufficient facts to support legitimate causes of action against Pulmosan.

### III. DAMAGES

After determining that a judgment by default should be entered, the Court should determine the amount and character of the recovery. Fed. R. Civ. P. 55(b)(2)(B); *see also Am. Red Cross v. Cmty. Blood Ctr.*, 257 F.3d 859, 864 (8th Cir. 2001) ("When a default judgment is entered on a claim for an indefinite or uncertain amount of damages, facts alleged in the complaint are taken as true, except facts relating to the amount of damages, which must be proved in a supplemental hearing or proceeding." (quoting *Everyday Learning Corp. v. Larson*, 242 F.3d 815, 818 (8th Cir. 2001) (internal quotation marks omitted))). Because the damages in this case were uncertain, the Court held a hearing in this case to determine the appropriate recovery. Plaintiff Vickie Bell requests damages for lost services under Arkansas Code Annotated § 16-62-102(f)(1), including both loss of household services and lost earning capacity provided to the household. All Plaintiffs seek damages for mental anguish under Arkansas Code Annotated § 16-62-102(f)(1) &(2) related to the value of lost companionship and grief associated with mental anguish.

The Court may "fix such damages as will be fair and just compensation for pecuniary injuries, including a spouse's loss of the services and companionship of a deceased spouse and any mental anguish resulting from the death to the surviving spouse and beneficiaries of the deceased." Arkansas Code Annotated § 16-62-102(f)(1). A recovery for mental anguish includes "grief normally associated with the loss of a loved one." Arkansas Code Annotated § 16-62-102(f)(2).

Mrs. Bell is seeking damages for Mr. Bell's services. Those damages include both household

services and lost earning capacity. Plaintiffs submitted a report from Helga A. Zauner, a specialist in Forecasting Techniquest, Time Series Analysis and Econometrics. (ECF No. 204-4). Zauner calculated Mr. Bell's lost earning capacity, reduced for his personal consumption, to be $161,961 from his death to age 70. Mrs. Bell also testified that Mr. Bell contributed to the household. His contributions included doing the laundry, yard work, cooking, and cleaning. Zauner's report indicates that the value of these lost household services is $3,770 per year, for a total of $15,813 lost from his death to age 70. The total amount of Mrs. Bell's loss of services resulting from Mr. Bell's death until he would have reached the age of 70 is $177,774.

However, Mrs. Bell testified that Mr. Bell would have continued to work after the age of 70. Mrs. Bell testified that Mr. Bell loved his job, and he was planning to continue to work. Her estimate was that he would have worked at least until age 75, and maybe longer. Plaintiffs suggest that the Court use the year 2011 for Mr. Bell's lost earning capacity from the age of 70-75. The Court agrees that this conservative estimate is an accurate base figure for its calculation of damages. Zauer calculated Bell's lost earning capacity, less consumption, for the year 2011 as $37,975. Accordingly, for the years in which Mr. Bell would have been ages 70 to 75, his estimated lost earning capacity, less consumption, is $189,785. Loss household services for the same years equals $18,850. Accordingly, the total amount of Mrs. Bell's loss for the years when Mr. Bell would have been between the ages of 70 and 75 is $208,635.

Finally, Mrs. Bell testified that Mr. Bell would likely have contributed his household services for the remainder of his life. His life expectancy is 83 years. The amount of loss for household services for the years when Mr. Bell would have been 75 until his estimated year of death at the age of 83 is $30,160. Accordingly, the total amount of loss Mrs. Bell suffered for Mr. Bell's services,

4

including lost earning capacity and loss of household services, from his death until age 83 is $416,569.

The Bells also seek damages for mental anguish related to Mr. Bell's premature death. Vickie Bell testified that Mr. Bell was her best friend. They liked to hike and enjoy outdoor activities together. They did everything together. They were planning to grow old together and watch their children grow up. Instead, Mrs. Bell watched her husband take his last breaths in the back of an ambulance on the side of the highway as she was bringing him home to meet hospice on October 21, 2010. Based on the evidence before the Court, it is clear that Mrs. Bell has experienced and continues to experience extreme mental anguish and suffering resulting from the loss of her husband. Accordingly, the Court finds that Mrs. Bell suffered mental anguish in the amount of $750,000.

Jonathan Bell also testified regarding his mental anguish from the loss of his father. Jonathan lived at home with his parents and had daily contact with his father. They had a meaningful father and son relationship, and would do things together such as fishing, attending the shooting range, shopping, and taking trips out of town. He testified that he has now lost interest in the those activities which he associated with his father. Phillip Bell, Jr. submitted an affidavit concerning his mental anguish for the loss of his father. (ECF No. 205). Phillip would speak regularly with his father and visit as often as he could. His father was an important part of his life and the life of his family. Of particular importance was the counsel and support he received from his father which is now absent from his life. After his father's surgery, it was difficult for Phillip to watch his father suffer in the hospital. The Court finds that Mr. Bell's sons both experienced mental anguish and suffering from the loss of their father which can be compensated in the amount of $250,000 for each

son.

The Court finds that the Plaintiffs have been damaged by the loss of Phillip Bell, Sr. in the following amounts: Vickie Bell's damages are $1,166,569; Jonathan Bell's damages are $250,000; and Phillip Bell's damages are $250,000.

## IV. SETTLEMENT WITH MINE SAFETY APPLIANCES

At the hearing, the Court requested that Plaintiffs supplement the record with a brief addressing the issue relating to the proper allocation of fault among defendants. Particularly, the Court requested that Plaintiffs address to what extent the Court should consider the amount of the settlement Plaintiffs received from MSA in calculating Pulmosan's liability to Plaintiffs. Plaintiffs timely submitted supplemental briefing (ECF No. 203), which the Court has considered.

Under federal law, where a "settlement payment and the jury's award pertain[] inseparably to one and the same loss," the verdict must be credited with the payment on settlement. *Arthur Young & Co. v. Reves*, 937 F.2d 1310, 1337 (8th Cir. 1991). The applicable Arkansas statute in this case is Arkansas Code Annotated § 16-61-204 (2010),[1] which provides:

> A release by the injured person of one (1) joint tortfeasor, whether before or after judgment, does not discharge the other tortfeasors unless the release so provides; but reduces the claim against the other tortfeasors in the amount of the consideration paid for the release, or in any amount or proportion by which the release provides that the total claim shall be reduced, if greater than the consideration paid.

In this case, the settlement with MSA did not serve to release or discharge Pulmosan from liability. However, Plaintiffs' settlement with MSA was paid in consideration for the same loss that the Plaintiffs' are seeking to recover from Pulmosan. Thus, Plaintiff's recovery against Pulmosan

---

[1] The Court has previously ruled that the recently amended portions of the Uniform Contribution Among Joint Tortfeasors Act do not apply to this case. (ECF No. 110).

6

shall be reduced by the amount of the consideration MSA paid for the release.

## V. CONCLUSION

Accordingly, Plaintiffs' Motion for Default Judgment (ECF No. 200) is **GRANTED**. Plaintiff is awarded $1,166,569 for Vickie Bell's damages; $250,000 for Jonathan Bell's damages; and $250,000 for Phillip Bell, Jr.'s damages, for a total of $1,666,569. This amount shall be reduced by the consideration Plaintiffs received for the release of MSA. Plaintiffs are directed to provide the Court with the documents memorializing the settlement agreement between Plaintiffs and MSA within seven (7) days of the entry of this Order. Plaintiff's request to file this information under seal is **GRANTED**, as the information is subject to a confidentiality agreement.

**IT IS SO ORDERED**, this 3rd day of August, 2016.

/s/ Susan O. Hickey
Susan O. Hickey
United States District Judge